UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON GOODE,<br>*Plaintiff*, | ) CASE NO. 3:24-cv-1010 (KAD)<br>)<br>) |
| v. | )<br>) |
| SCOTT SALIAS, *et al.*,<br>*Defendants*. | ) AUGUST 8, 2024<br>) |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Plaintiff Jason Goode, a sentenced inmate housed at Corrigan-Radgowski Correctional Center ("CRCC") within the Connecticut Department of Correction ("DOC"), brings this *pro se* civil rights complaint seeking damages arising from alleged violations of his constitutional and statutory rights under 42 U.S.C. § 1983 as well as the Americans with Disabilities Act ("ADA"). He names as defendants Captain Scott Salias,[1] Lieutenant Cardona, Correction Officer Garcia and the DOC. Compl., ECF No. 1.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

**Standard of Review**

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§

---

[1] The docket sheet spells this Defendant's name as "Salius." Plaintiff's Complaint refers, however, to this Defendant as "Salias." Thus, the Clerk of the Court is instructed update this Defendant's name to "Salias."

1915(e)(2)(B), 1915A(b).  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

The Court construes Plaintiff's complaint to state as true the following facts.

Plaintiff is diagnosed with hyperacusis, a hearing disorder that results in sound or noise sensitivity,[2] and other emotional or psychological disorders as documented in his DOC medical file. Compl. at 3 ¶ 8.

On June 15, 2021, Plaintiff was housed in a noisy area of his segregated housing unit at MacDougall-Walker Correctional Institution. *Id.* at ¶¶ 7, 9. Plaintiff made a request to the touring lieutenant to be relocated to a different cell because of his noise sensitivity. *Id.* This request was denied. *Id.*

Soon thereafter, Plaintiff experienced symptoms from his condition and became visibly agitated, which resulted in him being removed from his assigned cell. *Id.* He was placed in chains for more than a twelve-hour period of time, despite his "serene composure." *Id.*

---

[2] *See* Hyperacusis, WebMD.com, https://www.webmd.com/brain/sound-sensitivity-hyperacusis (last visited Aug. 8, 2024).

Because Plaintiff's restraints were not released for his bathroom breaks, Plaintiff urinated on himself. *Id.* at 4 ¶ 10. Plaintiff remained in his soiled clothing during his period of restraint. *Id.* He experienced sleep deprivation due to the immobility and duration of his restraints. *Id.* Although Plaintiff was later released from the restraints, Captain Salias ordered him to return to the same cell despite his verbal protests. *Id.* at ¶ 11.

Due to the noise levels in his assigned cell, Plaintiff experienced negative symptoms of his condition. *Id.* at ¶ 12. Plaintiff was subjected to restraints for another twelve to twenty-four hours from June 15 into June 16, 2021. *Id.* During this period of restraint, Plaintiff defecated on himself, remained in his soiled clothing while he ate his meals, and was sleep deprived. *Id.* at ¶ 13.

On June 17, 2021, Captain Salias again ordered Plaintiff returned to the cell. *Id.* at 5 ¶ 14. Plaintiff was escorted by Lieutenant Cardona and Officer Garcia back to this cell despite his "vocal concerns." *Id.* After Plaintiff was placed in the cell, Lieutenant Cardona instructed Plaintiff to come to the cell door slot to have his handcuffs removed. *Id.* at ¶ 15. Although Plaintiff started to comply, Officer Garcia and another officer tugged Plaintiff's arms forward, causing a deep gash on his forearm. *Id.*

Lieutenant Cardona dispersed pepper spray in Plaintiff's face while Officer Garcia and a second officer held Plaintiff by the arms. *Id.* at ¶ 16. When Plaintiff's arms were released, he experienced blindness from the chemical agent exposure and was bleeding profusely with the chemical agent seeping into his wound. *Id.* at ¶ 17.

Plaintiff was unable to see and in a state of bewilderment. *Id.* at 5–6 ¶ 18. He could not understand directions from staff to approach the cell door slot so that he could be removed from his cell, brought to a strip cell, and put into chains. *Id.*

Lieutenant Cardona and Captain Salias assembled an emergency correctional response team to have Plaintiff removed from his cell. *Id.* at 6 ¶ 19. Lieutenant Cardona ordered the response team to remove Plaintiff from his cell and to bring him to the medical unit, where Plaintiff was surgically treated for his forearm injury by the facility doctor. *Id.* at ¶ 20.

After the doctor applied stitches, Lieutenant Cardona ordered Plaintiff to be placed in four-point restraints. *Id.* at ¶ 21. Plaintiff remained in this position for about six to eight hours while his wound bled through his bandage. *Id.* at ¶ 22. Plaintiff remained, however, in a calm state. *Id.*

Later that day,[3] Plaintiff was released from the four-point restraints. *Id.* at 6–7 ¶ 23. He was then subjected to in-cell restraints with shackles and a tether chain connected to his handcuffs. *Id.* Plaintiff was placed in a bare cell containing a mattress, sink, toilet, but no hygiene products, for a period of 72 hours. *Id.* at 7 ¶¶ 23–24. Plaintiff had no bathroom breaks and was sleep deprived because of the restraints. *Id.* at ¶ 24. Nevertheless, he bore a "collective demeanor." *Id.*

**Discussion**

The Court first considers Plaintiff's constitutional claims for damages under 42 U.S.C. § 1983 against Lieutenant Cardona, Captain Salias, and Correction Officer Garcia. Plaintiff brings claims of excessive force and deliberate indifference to his health and safety under the Eighth Amendment.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true

---

[3] Although Plaintiff alleges that this occurred on June 16, 2021, Plaintiff's prior allegations indicate that the cell extraction occurred on June 17, 2021. This apparent discrepancy can be resolved through discovery.

with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

*Eighth Amendment Excessive Force*

Plaintiff's allegations indicate that he was subjected to significant and prolonged restraints, the use of physical force, and chemical agent exposure.

To adequately allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

Prison officials can also be held liable under § 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-cv-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Delano v. Rendle*, No. 9:13-cv-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-cv-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (internal quotation marks omitted).

**Arm Injury and Chemical Agent Exposure**

Plaintiff's allegations suggest that Officer Garcia subjected Plaintiff to excessive force when he pulled Plaintiff's arm and caused a laceration on Plaintiff's forearm despite Plaintiff's compliance with Lieutenant Cardona's order. Compl. at 5 ¶¶ 15–17. In addition, Plaintiff's allegations that Lieutenant Cardona sprayed him with a chemical agent while Plaintiff was restrained by Officer Garcia support a claim of excessive force in violation of the Eighth Amendment.

For purposes of initial review, Plaintiff's allegations are sufficient to permit him to proceed against Lieutenant Cardona and Officer Garcia in their individual capacities on his Eighth Amendment claims arising from their use of force (and alternatively, the failure to intervene to prevent the use of force by the other).

**Physical Restraints**

Plaintiff's allegations indicate that Lieutenant Cardona and Captain Salias both acted to subject him to physical restraints absent any legitimate penological reasons. *See* Compl at 9 ¶ 32. The use of restraints does not violate the Eighth Amendment unless it lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. *See Delgado v. Bezio*, No. 9-cv-6899 (LTS), 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011).

Plaintiff alleges that his symptoms of agitation due to his hyperacusis resulted in his placement in restrictive chains for more than twelve-hour periods and that his mobility was so restricted that he was not able to sleep or relieve himself properly. Plaintiff alleges further that he was later subjected to four-point restraints for six to eight hours and then later placed in in-cell restraints. According to the complaint, throughout these periods of harsh restraint, Plaintiff was allegedly calm or presented a "serene composure" or a "subsided emotional response."

For purposes of initial review, Plaintiff's allegations are sufficient to raise an inference that the alleged physical restraints imposed on Plaintiff exceeded the amount of force necessary to restore order, and thereby, lacked a legitimate safety or security justification. *See Sanchez v. Bell*, No. 3:22-cv-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation); *Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement under in-cell restraints without a legitimate safety or security basis). Accordingly, the Court will permit Plaintiff to proceed against Captain Salias and Lieutenant Cardona in their individual capacities for Eighth Amendment violation arising from Plaintiff's prolonged and significant physical restraints.

**Cell Removal**

Although not entirely clear, it appears that Plaintiff is also asserting that Lieutenant Cardona and Captain Salias violated Eighth Amendment excessive force standards when they allegedly assembled an emergency correctional response team to remove Plaintiff from his cell after he became "unable to comprehend any further staff directions." *See* Compl. at 5–6 ¶¶ 18–19; 9 ¶ 32. Plaintiff has not alleged any facts, however, to suggest that the emergency response team or any Defendant subjected Plaintiff to an excessive use of force in connection with the cell extraction. Indeed, Plaintiff alleges that Lieutenant Cardona ordered correctional officers to remove him from his cell to bring him to the medical unit, where he received wound treatment. *Id.* at 6 ¶ 20. These allegations fail to raise an inference that Plaintiff's cell removal was ordered without legitimate reason, and therefore, Plaintiff has not alleged a plausible Eighth Amendment excessive force claim against either Captain Salias or Lieutenant Cardona arising out of his removal from his cell.

*Deliberate Indifference to Health and Safety and/or Medical Needs*

Plaintiff asserts that Captain Salias and Lieutenant Cardona acted with deliberate indifference to his mental health needs. Compl. at 5–9 ¶¶ 17–32.

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. Appx. 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

Prison conditions can themselves constitute cruel and unusual punishment in violation of the Eighth Amendment if prison officials act, or fail to act, with "deliberate indifference to a substantial risk of serious harm to a prisoner." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of

8

confinement, an inmate must demonstrate (1) that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[ ]" or posed "a substantial risk of serious harm" to his health or safety, *Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347, and (2) the defendant acted with a subjectively reckless state of mind akin to criminal recklessness. *Salahuddin*, 467 F.3d at 280.

The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. Conditions are considered in combination when they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example a low cell temperature at night combined with a failure to issue blankets." *See Wilson*, 501 U.S. at 304.

As to the *mens rea* prong, the prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently. Plaintiff must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

### Noisy Cell Assignment

Plaintiff indicates that Captain Salias ordered Plaintiff's assignment to a noisy cell despite his knowledge that Plaintiff's mental health suffered from his exposure to high levels of noise. Compl. at 3–5 ¶¶ 9, 12, 14. For initial review purposes, Plaintiff's allegations are

sufficient to plausibly allege deliberate indifference to Plaintiff's mental health needs in violation of the Eighth Amendment against Captain Salias.

Plaintiff's allegations also indicate that Lieutenant Cardona and Officer Garcia returned him to his noisy cell despite his "vocal concerns." Compl. at 5 ¶ 14. Accordingly, Plaintiff may also proceed on Eighth Amendment damages claims against Lieutenant Cardona and Officer Garcia for their deliberate indifference to his health and safety.

### Restraints and Conditions

As discussed, Plaintiff's allegations indicate that he was subjected to an extremely restrictive restraint after he exhibited mental health distress. Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment damages claims against both Captain Salias and Lieutenant Cardona (who are both alleged to have ordered Plaintiff's placement in restraints). *See* Compl. at 9 ¶ 32. for their deliberate indifference to his mental health needs when they subjected him to prolonged and significant levels of restraints despite his mental health issues.

In addition, the complaint indicates that—while on restraints—Plaintiff was deprived of his basic human needs concerning his need for sleep, toileting, and personal hygiene. Thus, Plaintiff may proceed on an Eighth Amendment claim for damages against Captain Salias and Lieutenant Cardona for subjecting him to conditions that deprived him of his basic human needs.

### Arm Injury, Chemical Agent, and Cell Removal

For purposes of initial review, the Court construes Plaintiff's allegations as including that both Lieutenant Cardona and Officer Garcia were personally involved with the use of a chemical agent and the circumstances which resulted in his arm injury. Accordingly, Plaintiff may proceed against Lieutenant Cardona and Officer Garcia on his Eighth Amendment damages claims based

10

on their deliberate indifference to his health and safety arising out of use of the chemical agent and the injury to his arm.

As discussed above in relation to the Plaintiff's excessive force allegations, Plaintiff has not alleged any facts to suggest that either Lieutenant Cardona or Captain Salias acted with deliberate indifference to his health and safety or mental health needs when they coordinated his removal from his cell. In fact, the complaint indicates that Plaintiff's removal was necessary as he was unable to comply with staff orders and he required medical attention (facilitated by Lieutenant Cardona's order to bring Plaintiff to the medical unit where he received stitches). Compl. at 6 ¶¶ 19–21. Accordingly, Plaintiff has not alleged a plausible Eighth Amendment deliberate indifference claim arising from his cell removal by the emergency response team or any named defendant.

*Official Capacity Claim under 42 U.S.C. § 1983*

Plaintiff seeks an injunctive order to receive surgery to mend the significant scarring on his forearm. Compl. at 12 ¶ 5.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-cv-1758 (VAB), 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846–47).

11

Plaintiff may not proceed in this action on his official capacity claims against DOC employees who work at MacDougall. As Plaintiff is no longer housed at MacDougall, his requests for official capacity relief against Defendants are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

To the extent he asserts official capacity claims for monetary damages against Defendants, because they are state employees, such claims are dismissed as barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

*ADA Violation*

Plaintiff asserts violations of the ADA against the DOC and Defendants in their official capacities. Compl. at 10 ¶ 35. The Court also construes his complaint to allege a violation of the Rehabilitation Act ("RA") against the DOC and Defendants in their official capacities.

The standards under Title II of the ADA and § 504 of the RA "are generally the same[.]" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). [4] The ADA and the RA both apply to state prisons and prisoners. *Wright*, 831 F.3d at 72. Thus, the Court considers whether Plaintiff has stated plausible claims of disability discrimination under the ADA or the RA.

To establish a *prima facie* violation under Title II of the ADA or the RA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants']

---

[4] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "we treat claims under the two statutes identically." *Wright*, 831 F.3d at 72.

services, programs, or activities or [defendants] otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009).

The Court assumes for purposes of initial review only that Plaintiff is a qualified individual under the ADA and RA on the basis of his hyperacusis and other mental health disorders as documented in his health records. *See* Compl. at 3 ¶ 8. Plaintiff asserts disability discrimination claims under theories of disparate impact and failure to provide him with a reasonable accommodation. *Id.* at 10 ¶ 37.

### Disparate Impact

"To establish a *prima facie* case under a disparate impact theory, a plaintiff must demonstrate '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" *Doherty v. Bice*, No. 18-cv-10898 (NSR), 2020 WL 5548790, at *7 (S.D.N.Y. Sept. 16, 2020) (quoting *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016)). To plead a disparate impact claim, a plaintiff "must include at least one allegation that raises an inference of such disparity—one sufficient to put the defendants on notice regarding the basis for [the] plaintiff['s] belief in a disparate effect." *Id.* (citation and quotation marks omitted.)

Plaintiff appears to allege that DOC has a facially neutral practice of not providing mental illness assessments to inmates or not notifying staff about an inmate's mental illness, and that the inability of DOC staff to account for an inmate's mental health issues when issuing disciplinary reports or reviewing an inmate's administrative segregation results in inmates with mental health

issues being subjected to prolonged or even indefinite isolation and excessive restraints. Compl. at 11 ¶ 39. The Court construes Plaintiff's allegations most broadly to satisfy the first and second prongs of a disparate impact claim. Thus, for purposes of initial review, Plaintiff's allegations are sufficient to proceed on disparate impact claims under the ADA and RA against DOC and the individual Defendants in their official capacities for further development of the record.

**Reasonable Accommodation**

Plaintiff alleges that he was not housed with a reasonable accommodation for his mental health condition. In evaluating a reasonable accommodation claim, the Court asks "whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled." *Wright*, 831 F.3d at 72 (citation and quotation marks omitted). "A plaintiff need not demonstrate that [he] is entirely precluded from accessing a benefit; rather, difficulty in accessing a benefit is sufficient to sustain a reasonable accommodation claim." *Scalercio-Isenberg v. Port Auth. of N.Y. & N.J.*, 487 F. Supp. 3d 190, 201 (S.D.N.Y. 2020). The Court construes Plaintiff's allegations to assert that DOC prevented him from having access to appropriate housing that accommodated his mental health issues. At this initial stage in the proceeding, Plaintiff's may proceed on his ADA and RA claims arising from failure to provide him housing that accommodates his mental health conditions against DOC and individual Defendants in their official capacities for further development of the record.

*Connecticut General Statutes § 46a-64 and § 46a-77*

Plaintiff alleges violations of Conn. Gen. Stat. § 46a-69 and § 46a-77(c) against the DOC and the individual Defendants in their official capacities. Compl. at 2 ¶ 1, 11 ¶¶ 40–41.

Section 46a-69 makes it a "discriminatory practice to violate any of the provisions of sections 46a-70 to 46a-78, inclusive." Conn. Gen. Stat. § 46a-69. Section 46a-77(c) requires that

each state agency comply "in all of its services, programs and activities with the provisions of the [ADA] to the same extent that it provides rights and protections for persons with physical or mental disabilities beyond those provided for by the laws of this state." Conn. Gen. Stat. § 46a-77(c). The statutory scheme expressly creates a private cause of action for this provision. "Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, inclusive . . . may petition the Superior Court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable." Conn. Gen. Stat. § 46a-99. Thus, the Court's analysis relevant to Plaintiff's ADA claims applies to Plaintiffs' state law claims. *See Paschal-Barros v. Quiros*, No. 3:21-cv-698(SALM), 2022 WL 124544, at *11 (D. Conn. Jan. 13, 2022) (citing cases). Accordingly, Plaintiff's claims under Gen. Stat. § 46a-69 and § 46a-77(c) will proceed against the DOC and the individual Defendants in their official capacities.

**Conclusion**

For the foregoing reasons, the Court enters the following orders:

(1) Plaintiff may proceed on his claims of (1) excessive force under the Eighth Amendment against Captain Salias, Lieutenant Cardona, and Officer Garcia in their individual capacities; (2) deliberate indifference to health, safety and/or medical needs under the Eighth Amendment against Captain Salias, Lieutenant Cardona, and Correction Officer Garcia in their individual capacities; (3) violations of the ADA and RA due to disparate impact of DOC policies on inmates with mental health conditions and failure to afford Plaintiff a reasonable accommodation for his mental health condition against DOC and Captain Salias, Lieutenant Cardona, and Officer Garcia in their official capacities; and (4) violation of Connecticut General

15

Statutes § 46a-69 and § 46a-77(c) against DOC and Captain Salias, Lieutenant Cardona, and Officer Garcia in their official capacities.

(2) The Clerk shall verify the current work addresses for Captain Scott Salias, Lieutenant Cardona, and Correction Officer Garcia with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by August 29, 2024, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) By August 15, 2024, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint, and a copy of this Order on DOC and Captain Scott Salias, Lieutenant Cardona, and Correction Officer Garcia in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If a defendant chooses to file an answer, the defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by March 6, 2025. Discovery requests shall not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by April 5, 2025.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case.** Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of August 2024.

                                             */s/ Kari A. Dooley*
                                             KARI A. DOOLEY
                                             UNITED STATES DISTRICT JUDGE